**UNITED STATES of America**

v.

**Dmitric J. HILLIARD, a/k/a Derek Hilliard, a/k/a Meatball, Appellant.**

**No. 77-1214.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 27, 1977.

Decided Dec. 30, 1977.

Gerald Goldman, Washington, D. C. (appointed by this Court), for appellant.

Carol E. Bruce, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and John L. Gizzareiil, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before McGOWAN, LEVENTHAL and ROBB, Circuit Judges.

Opinion for the Court filed by ROBB, Circuit Judge.

ROBB, Circuit Judge:

The appellant Dmitric J. Hilliard was convicted of armed robbery of a postal employee in violation of 18 U.S.C. § 2114. The indictment alleged that Hilliard was "also known as Derek Hilliard and also as 'Meatball'". The government's case was that on the morning of October 1, 1976 Roland Williams, a letter carrier, was robbed while delivering mail. Williams testified that as he was placing mail in boxes in an apartment building on Gale Street in Washington he was accosted by a man holding a pistol and forced to surrender his mail bag. The assailant threw the bag to an accomplice waiting on a flight of steps which led to the basement. After a short pause the two robbers fled from the building leaving the mail bag behind.

The case for the prosecution depended entirely upon the testimony of Williams, who identified Hilliard as the robber; the only other government witnesses were a postal inspector and two police officers who had no personal knowledge of the robbery. However, the prosecution bolstered its case by repeated suggestions to the jury, over defense objections, that information existing outside the record proved the defendant's guilt. Specifically, the prosecutor repeatedly insinuated that information obtained from unknown witnesses identified the robber as Hilliard or "Meatball". On this appeal Hilliard contends that this proof of guilt by insinuation was fatally prejudicial. We agree.[1]

The prosecutor began his campaign of suggestion in his opening statement to the jury:

What the Government intends to prove and will prove in this case is that on or about October 1, 1976, in the District of Columbia, that is at 1704 Gale Street, Northeast, Dimitric H. Hilliard, *who is also known sometimes as* Derek Hilliard and *"Meatball"*, stole from Roland Williams, a letter carrier in the employ of the United States Postal Service, mail matter belonging to the United States.

\*   \*   \*   \*   \*   \*

*And you will hear how through a series of conscientious efforts these investigators were able to learn that it was Mr. Hilliard who held the gun and forced the letter carrier, Roland Williams, to turn over his mail*; and that through a scrupulous process—interviewing, re-interviewing, and viewing of many, many photographs—Mr. Williams was able to choose Dimitric Hilliard as the person who had taken his mail.

[Emphasis supplied]

The suggestion that the authorities had independent evidence of the defendant's guilt next emerged when the prosecutor questioned Detective Finch concerning the selection of photographs for the array from which Williams first identified Hilliard:

Q. Had you received any information that caused you to add photographs to the book?

A. Yes, sir I did.

Q. What did you receive?

A. I had learned from speaking with Inspector Thomas of the U. S. Postal Service—

Defense counsel immediately objected to the introduction of conversations with other witnesses. The court responded "Yes." The prosecutor continued:

Q. Just tell us what you learned.

A. *I learned there was a suspect.*

Q. Who was that?

A. *Dimitric Hilliard.*

Q. What did you do with the results of the knowledge you obtained?

A. I obtained a photograph—

[Emphasis supplied]

Defense counsel then objected to Finch's testimony "that there was a suspect named Dimitric Hilliard" and also moved for a mistrial on the ground that it was "highly

---

1. We do not reach the merits of two other contentions made by the appellant, that the trial court abused its discretion in rejecting evidence tendered to show that someone else may have committed the crime, and in ruling that the defendant might be impeached by evidence of his prior conviction.

prejudicial . . . [to suggest] that Dimitric Hilliard was a suspect in this case before there was an identification." "That indicates that there is some other evidence that [the jury is] not going to hear and it would be inadmissible." The court denied the motion for a mistrial, but advised the prosecutor: "You know what the problem is. Try to avoid it." The prosecutor then resumed his examination by again eliciting that Finch had placed photographs of Hilliard in the book from which Williams made his identification.

A few minutes later the prosecutor called Postal Inspector Thomas and developed that beginning on the day of the crime he had conducted an investigation on Gale Street:

Q. What did you do there?

A. I canvassed the area in the apartment building looking for witnesses that may have seen the offense committed *or had any information concerning any individual that was responsible for the commission of that robbery.*

Q. Did you have occasion to go back to the area at a subsequent time?

A. I was in the area on several occasions, yes, sir.

Q. Did you have occasion to speak to the people who live in the houses on that street?

A. I did.

Q. Did you ask them questions?

A. I did.

Q. What questions did you ask them?

A. On one—

[Defense Counsel]: I object to any testimony along that line as hearsay.

[Prosecutor]: Just the questions he asked.

THE COURT: He may tell us his questions but do not get into conversations.

By [the Prosecutor]: What questions did you ask?

A. On one occasion when I canvassed the area on October 5, 1975—1976, *I was asking people that lived in the 1600 block of Gale Street if they knew a subject by the name of Meatball.*

Q. As a result of asking those questions, did you communicate anything to the Metropolitan Police Department?

A. I did.

Q. What was it that you told them?

[Defense Counsel]: Your Honor, I object. That would be based on hearsay.

[Prosecutor]: What he told them is not hearsay.

THE COURT: Come to the bench. (At the bench:)

THE COURT: Again, if you stated it in this fashion, acting on information you received, what did you do, wouldn't that solve your problems?

[Prosecutor]: That is the same.

[Defense Counsel]: He can't get into that.

THE COURT: He can ask the question what he did and what he did is certainly admissible.

[Defense Counsel]: Your Honor, that would be hearsay. I know what the answer is. He went to the grandmother's house.

THE COURT: You can rephrase your question.

[Prosecutor]: That is simply not the answer to that question.

*The answer to the question is that he told Detective Finch that Dimitric Hilliard was a suspect.*

THE COURT: Rephrase your question.

\* \* \* \* \* \*

(in open Court:)

By [the Prosecutor]:

Q. Now, as a result of your conversations, you stated that you took some action with relation to the Metropolitan Police Department. Is that correct?

A. That is.

Q. To whom did you speak?

A. I spoke with Detective Finch. He was assigned to the robbery section.

Q. Now, without reporting any other conversations that you had with anybody else, what did you tell Detective Finch?

A. I told Detective Finch that I had received information on the 5th that—

[Defense Counsel]: Objection.

THE COURT: The objection is sustained.

By [the Prosecutor]:

Q. Just tell us what you told—what was the result—

THE COURT: What did you do?

By [the Prosecutor]:

Q. What did you do with relation to Detective Finch?

A. I told him that one of the subjects involved in the robbery was allegedly—

[Defense Counsel]: Objection, Your Honor.

THE COURT: The objection is sustained.

[Emphasis supplied]

\*    \*    \*    \*    \*    \*

Finally the prosecutor asked:

As a result of your investigations, Inspector Thomas, did you have occasion to arrest anyone in connection with the offense?

As might have been expected the Inspector answered that he had arrested the defendant Hilliard.

In his final argument the prosecutor returned to the Meatball theme by reminding the jury that as a result of information about Meatball obtained by the police, Hilliard's picture had been included in the photographic array shown Williams.

Mr. Williams doesn't know the name of the man who robbed him. He doesn't tell anybody his name, but the Postal Inspector Thomas canvasses the neighborhood asking if they know a man named Meatball.

Now, he develops some information and as a result of that information, puts a picture of Meatball in his book.

We think the inevitable result of the prosecutor's repeated questions and references to Meatball and the suspect discovered by the investigation was to splash the defendant with damaging matter that was not in evidence. Specifically, the jury must have understood that Inspector Thomas had conducted an investigation to learn the whereabouts of a suspect named Meatball and had passed along information concerning the suspect to Detective Finch, and that Finch had learned from Thomas that the suspect was Hilliard. In addition, although there was no admissible evidence that Hilliard was in fact known as Meatball, the jury took with it into the jury room an indictment alleging that Meatball was Hilliard's alias. We repeat what we said in *United States v. Whitmore,* 156 U.S.App.D.C. 262, 480 F.2d 1154 (1973), a similar case of prosecutorial insinuation, that such tactics cannot be tolerated.

The government argues that the testimony of Inspector Thomas and Detective Finch was not hearsay, because it "was offered merely to explain why the police took the action they did in placing appellant's picture in a photographic array." We reject this argument. There was no issue as to the presence of Hilliard's picture in the array, and therefore no occasion for any explanation. In any event, explanation of a photographic array cannot be allowed to repeal the hearsay rule.

*The Judgment is Reversed.*