UNITED STATES of America, Appellee,

v.

James SMALL, Appellant.

No. 93–3161.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 7, 1995.

Decided Jan. 30, 1996.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, was on the briefs.

Elizabeth H. Danello, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, and Kathleen M. O'Connor, Assistant United States Attorneys, were on the brief. Elizabeth Trosman, Assistant United States Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellant James Small appeals his conviction of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a) (1988), on the grounds that: (1) the prosecutor's prejudicial references in opening and closing arguments to the jury about matters never put into evidence denied Small a fair trial; (2) the district court abused its discretion by denying a mistrial after the government, in violation of Federal Rule of Criminal Procedure 16, unexpectedly used Small's prejudicial non-verbal statement communicating consciousness of guilt; and (3) the district court erred in refusing to postpone sentencing so that the drugs could be reweighed. Although the prosecutor erred by referring during opening and closing arguments to matters not in evidence, Small has failed to show a sufficient likelihood that the prosecutor's statements prevented the jury from properly weighing the evidence, particularly given the split verdict of the jury, which acquitted Small of the charge to which his defense of innocent presence might have applied. Additionally, we find no violation of Rule 16 in light of the ambiguous and non-communicative conduct; moreover, Small has shown no prejudice. Finally, we find no error by the district court in refusing to postpone sentencing to have the drugs reweighed when the defense failed to alert the court to any problem until the day of sentencing and then proffered no basis for doubting the weight. Accordingly, we affirm.

## I.

Small was arrested as a result of drugs being found in an Amtrak sleeper car after a review of an Amtrak reservation form by Amtrak officials caused them to suspect that Small and his companion might be drug couriers. Amtrak Investigator Thomas Cook, accompanied by Detective Barbara Lyles and

Investigator Maria Pena of the Metropolitan Police Department, confronted Small and his companion in the sleeper car. After conversing with the two men about their tickets, identification, and destination, Cook decided to search the sleeper car. Small, before stepping out into the hallway so that Cook could search the car, put on his socks and sneakers. Cook thereafter found a packet of white rock substance, later determined to weigh 35.69 grams, underneath the roll of toilet paper in the bathroom. Small and his companion were arrested and, upon searching Small, in the presence of the two officers, Cook found 54.47 grams of crack cocaine in Small's sock. Cook also seized $306 in currency from Small.

Small was indicted for two counts of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) & (b)(1)(B)(iii) and 18 U.S.C. § 2. Following the district court's denial of Small's motion to suppress the evidence, the jury acquitted Small of count one, relating to the bathroom drugs, but convicted him of count two, possession with intent to distribute the drugs found in his sock. The district court, upon determining that the 35.69 grams found in the bathroom was "relevant conduct" under the Sentencing Guidelines, United States Sentencing Guidelines (U.S.S.G.) § 1B1.3(a) (1995), to be added to the weight of the 54.47 grams found in Small's sock for purposes of determining his base offense level, sentenced Small to the mandatory minimum of ten years' imprisonment followed by five years of supervised release.

## II.

■ This circuit has long made clear that the government must take care to ensure that statements made in opening and closing arguments to the jury are supported by evidence introduced at trial. In *Gaither v. United States*, 413 F.2d 1061, 1079 (D.C.Cir.1969), the court viewed such rigor to be required by *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), where the Supreme Court observed "that the interest of the Government in a criminal prosecution 'is not that it shall win a case, but that justice shall be done,' and that

'the average jury ... has confidence that these obligations [of fairness and accuracy] ... will be faithfully observed.'" Notwithstanding the prosecutor's good faith and jury instructions that arguments of counsel are not evidence, the *Gaither* court concluded that the court "must carefully examine the error committed to determine whether it sufficiently prejudiced [the defendants] to call for reversal." *Gaither*, 413 F.2d at 1079. The defendant must show substantial prejudice. *United States v. Perholtz*, 842 F.2d 343, 361 (D.C.Cir.1988); *United States v. Monaghan*, 741 F.2d 1434, 1443 (D.C.Cir. 1984), *cert. denied*, 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985). In assessing prejudice, the *Gaither* court built on the harmless-error analysis in *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), and identified three factors: "the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." 413 F.2d at 1079 (footnotes omitted). This court has continued to apply the *Gaither* analysis to claims of prosecutorial misconduct. *See Perholtz*, 842 F.2d at 361; *United States v. Jordan*, 810 F.2d 262, 265 (D.C.Cir.), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987).

■ Small contends that the prosecutor's opening and closing arguments to the jury denied him a fair trial. Specifically, Small points to the fact that in opening statement the prosecutor made several direct and indirect references to prejudicial details in the Amtrak reservation form, which had caused Amtrak officials to focus on Small and his companion, including the payment in cash for his ticket, the payment of an extra $163 for the sleeper car, the late timing of the reservation, and the last-minute purchase of the tickets, although the form was never introduced into evidence. Small also points to the prosecutor's statement that Small and his companion were unemployed and that when the telephone number on the Amtrak form was dialed, the name given on the answering machine message did not match the reservation form. Likewise, Small points to the prosecutor's reference to Small's "confessional" statement to his companion to the effect

that the government would keep seized money because it was "drug related."

■■■ The government concedes that no evidence was introduced at trial to support these statements. Consequently, the court must determine, as in *Gaither*, whether the prosecutor's errors in opening and closing arguments, by referring to matters that were never introduced into evidence at trial, denied Small a fair trial by causing undue prejudice or by preventing the jury from properly assessing the evidence. *See Frazier v. Cupp*, 394 U.S. 731, 735–36, 89 S.Ct. 1420, 1422–23, 22 L.Ed.2d 684 (1969). For those improper prosecutorial statements to which Small objected, we review for substantial prejudice. *Perholtz*, 842 F.2d at 361. Because Small did not object to the prosecutor's reference to his "confessional" statement to his companion, however, we review only for plain error, FED.R.CRIM.P. 52(b), namely error such that it " ' "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." ' " *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936))).

■■■ The prosecutor began her opening statement by telling the jury "you will hear that Amtrak and the Metropolitan Police Department are well aware that people who transport illegal narcotics—." Small's counsel objected, and explained at a bench conference that counsel intended to object to all references to why the police became suspicious of Small as irrelevant or inadmissible evidence. The district court, in the first of several advisory cautions to the prosecutor, reminded the prosecutor that opening statement is limited to "appropriate factual matters." After learning that the prosecutor intended to discuss why Small and his companion became suspected couriers, the court pointed out that probable cause was not at issue and that the prosecutor should stay away from matters relating to probable cause. The court instructed the prosecutor: "No, stay away from that. I'm perfectly willing to instruct that, that their presence in

the car was appropriate and legal, and that they had the right to inquire of the people in there so they won't say that the police did something wrong." Further, "I have no problem with you showing they were on the train, the train originated in New York, and your officer said at the suppression hearing and can say here that the printout showed that it originated in New York." When the prosecutor indicated that she intended to introduce evidence about the reservation form that Cook reviewed, the court responded, "That's on the printout. That's what I just said." But, when the prosecutor persisted that information about New York City being a source city was also relevant, the court disagreed and again told the prosecutor, "Don't get into that. Just get into the fact that's what he did, and what he did from what he saw." The judge explained, "they can testify that they looked at the—they went there, that they knew that the people occupying that room and [sic] purchased tickets in New York, and were on their way to Hamlet [, North Carolina]."

Nevertheless, the prosecutor proceeded in her opening statement to refer to the details from the Amtrak reservation form and why the officers approached Small and his companion. The prosecutor explained that the police officers were members of the Drug Interdiction Team, "a very highly specialized, very professional group of police officers" who worked at Union Station, reviewing certain information from reservations, such as the one Small had made that day. Then the prosecutor went on to state that the officers learned that Small had purchased a sleeper car; he had paid $163 extra for the car; the train originated in New York City; the train left at 9:30 a.m. and was scheduled to arrive in Hamlet at 9:30 p.m. The prosecutor told the jury that Small was using a sleeper car for day-time travel, the reservation was made the day before departure, the tickets were purchased with cash, the tickets were purchased just moments before the train departed from New York, and Small was traveling one way with no indication of a means of returning. The prosecutor further told the jury that a call-back number given at the time of the reservation was dialed, and a

voice on an answering machine answered, "Hello, this is Richard," which did not match the reservation form. "[B]ased on the combination of all these different factors, not just one factor set aside alone, but the combination of factors," the prosecutor told the jury, Amtrak officials "decided that they would like to interview these two individuals traveling in this sleeper car."

The prosecutor then described Small's arrest, including that Small had said to his companion after their arrest: "They must have called," and "They'll keep the money because it's drug related." Small's counsel did not immediately object to this particular statement, but moved for a mistrial at the close of the opening statement because of the reference to the call-back number. The prosecutor also told the jury that the police learned from Small that he and his companion were unemployed, to which statement Small's counsel objected.

During the government's case-in-chief, Inspector Cook testified, over defense objection, about the relevance of New York City as a "source city." The prosecutor proceeded to ask Cook about "unusual characteristics" from the Amtrak reservation form that had made him suspicious that Small and his companion were drug couriers, and defense counsel objected. The district court ruled that the prosecutor had already shown the basic background and refused to allow anything further on that issue. The court also ruled that the prosecutor had to offer the Amtrak reservation form into evidence to continue referring to it. The court thereafter sustained the defense objection to introduction of the Amtrak reservation form on grounds of hearsay, ruling that the form inadmissible after the prosecutor was unable to lay the proper foundation for its admission as a business record.

In closing argument, over defense objection, the prosecutor returned to matters focusing on probable cause and the Amtrak reservation form, which was not in evidence. The prosecutor told the jury:

Investigator Cook told you that he came to suspect from a single piece of paper.... He reviews reservation information and ticket information from passengers who are traveling on the Amtrak trains. Certain things that he reviews, when he reviews that information, he looks for certain things. He looks for people who are traveling one way on long-distance travel with no indication of how they anticipate returning. He looks for people who paid for their ticket in cash shortly before the train is scheduled to depart.... So, if they come to the station and pick up the ticket moments before the train is to depart, that is something he looks for. He told you he looks for people who are traveling from what are known as source cities and that New York City has been defined as a source city.... He looks for people who are traveling in the sleeping compartments, especially people who are traveling in a sleeping compartment during daytime hours because ... people who are traveling with illegal narcotics like to be secure, and safe, and away from the general public.... Investigator Cook didn't pick Mr. Small out by the clothes he was wearing, by his height, by his weight, by his age, by what he was saying. He picked him out from a piece of paper based on his [Cook's] interdiction experience. And, after reviewing Mr. Small's reservation information, he decided that he wanted to attempt an interview....

■ The tension between the district court's admonitions to the prosecutor to avoid irrelevant and unnecessary prejudicial opening remarks, and the prosecutor's persistent efforts to color the case for the jury's reception of evidence is evident. The prosecutor's effort to provide the full context of the officer's investigation leading to his interaction with Small conflicted with the district court's instructions that the prosecutor avoid prejudicial matters relating to the investigative techniques of law enforcement officials. Although the line between acceptable and improper advocacy may not be clear in every case, *see Young*, 470 U.S. at 7, 105 S.Ct. at 1042, *Gaither* has long made clear that the prosecutor may not refer in the opening or the closing statement to evidence not admitted at trial, 413 F.2d at 1079, particularly when the evidence is inadmissible or excluded. *United States v. Foster*, 982 F.2d 551,

555 (D.C.Cir.1993); *United States v. Hilliard,* 569 F.2d 143, 146 (D.C.Cir.1977). Here, the degree of prejudice to Small is enhanced because the drug-courier profile evidence was relevant only to the officers' probable cause and not to Small's guilt. *See, e.g., United States v. Gomez–Norena,* 908 F.2d 497, 501 (9th Cir.) ("Courts are keenly aware of the dangers of admitting testimony concerning the drug courier profile.") (citations omitted), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). Indeed, several circuits have held that evidence of drug-courier profiles is inadmissible as substantive evidence of guilt. *See United States v. Williams,* 957 F.2d 1238, 1241–42 (5th Cir. 1992); *United States v. Jones,* 913 F.2d 174, 177 (4th Cir.1990); *United States v. Carter,* 901 F.2d 683, 684–85 (8th Cir.1990); *United States v. Hernandez–Cuartas,* 717 F.2d 552, 555 (11th Cir.1983). The district court's instructions to the prosecutor were designed to draw a line between providing background on objective facts while avoiding prejudicial references describing the officers' probable cause to stop Small and his companion. *See, e.g., United States v. Brockington,* 849 F.2d 872, 875 (4th Cir.1988) ("The prosecutor's opening statement should be an objective summary of the evidence reasonably expected to be produced, and the prosecutor should not use the opening statement as an opportunity to ' "poison the jury's mind against the defendant" ' or ' "to recite items of highly questionable evidence." ' ") (citations omitted); ABA STANDARDS FOR CRIMINAL JUSTICE 3–5.5, commentary at 100 (3d ed. 1993) ("[T]he prosecutor should scrupulously avoid any utterance that he or she believes cannot and will not later actually be supported with [competent and reliable] evidence.").

■■■ The district court's admonitions were focused on ensuring a fair trial, and thereby preserving any conviction that occurred, whereas the prosecutor seemingly pressed to make guilt clear without sufficient concern about careful adherence to the district court's rulings. The prosecutor, as well as defense counsel, is duty-bound to adhere to the district court's rulings, and the prosecutor's failure to do so in opening argument was erroneous. *See Berger,* 295 U.S. at 88, 55 S.Ct. at 633; ABA STANDARDS FOR CRIMI-NAL JUSTICE 3–5.2; *see also Sacher v. United States,* 343 U.S. 1, 8–9, 72 S.Ct. 451, 454–55, 96 L.Ed. 717 (1951). The district court's instructions to the prosecutor about confining the nature of the opening and closing arguments to the jury proved well advised in retrospect, in light of the fact that the prosecutor failed to introduce evidence on irrelevant prejudicial matters and was unprepared to lay the necessary foundation for admission of the Amtrak reservation form as a business record. Indeed, the latter circumstance suggests doubt about whether the prosecutor ever intended to introduce the previewed evidence. *See* ABA STANDARDS FOR CRIMINAL JUSTICE 3–5.5 ("The prosecutor's opening statement should be confined to a statement of the issues in the case and the evidence the prosecutor intends to offer which the prosecutor believes in good faith will be available and admissible.").

Our review of the record indicates that the prosecutor came close to the line drawn by the district court in several instances and crossed it in others. For example, the district court allowed the prosecutor to refer to the Amtrak reservation form in opening argument while making clear that the only purpose of such references should be to set the stage for the officers' actions without getting into "profile" matters relating to probable cause. Yet, the prosecutor proceeded to refer to the prejudicial "profile" details from the form. Rather than set the stage for the officers' confrontation of Small and his companion in accordance with the district court's instructions, the prosecutor encroached upon matters relevant only to investigative techniques. In addition, we find no justification for the prosecutor's reference in her opening statement to Small's post-arrest "confessional" statement, particularly when the record indicates that the prosecutor did not attempt to introduce that evidence. By continuing to refer to the "profile" Amtrak reservation information in closing argument, after all of the sustained defense objections and instructions from the district court, the prosecutor also placed at risk the convictions that she sought to ensure. *See Frazier,* 394 U.S. at 736, 89 S.Ct. at 1423; *Jordan,* 810 F.2d at 265.

Nevertheless, the peculiar circumstances here, due largely to the split verdict, persuade us that Small's right to a fair trial was not prejudiced. First, the drug-courier profile evidence was not central to the prosecution's proof of guilt. Rather, the government's case concerning the drugs found in Small's sock rested on the eyewitness testimony of the officers. *Cf. Brockington,* 849 F.2d at 875. The reference to the "confessional" statement, to which Small did not object, was an isolated occurrence that did not affect the fairness of the proceeding under a plain-error analysis.

Second, the effects of the errors were mitigated. *See Perholtz,* 842 F.2d at 361. Although standard jury instructions may not always suffice to mitigate the prejudice, the district court instructed the jury before the prosecutor's opening argument that arguments of counsel were not evidence. This admonition was repeated during the final instructions to the jury. Defense counsel did not request other instructions, *see Frazier,* 394 U.S. at 735 n. *, 89 S.Ct. at 1422–23 n. *, and we find no basis on which to conclude that the district court abused its discretion in denying the motion for a mistrial at the close of the opening argument or the later motion to strike any testimony about the Amtrak reservation form. *See Brockington,* 849 F.2d at 875.

The split verdict, acquitting Small of the bathroom-drug charge, itself refutes any inference that the jury gave undue weight to matters that were not in evidence and failed to follow the instructions. *See United States v. Boney,* 977 F.2d 624, 631–32 (D.C.Cir. 1992); *see also United States v. Brown,* 16 F.3d 423, 426, 429 (D.C.Cir.1994). Although the prosecutor's references to the "profile" details from the Amtrak reservation form, to the unemployed status of Small and his companion, and to Small's "confessional" statement were arguably the only linkage of Small to the bathroom drugs, other than his mere presence, his acquittal on that charge is a strong indication that any prejudice did not impermissibly infect his conviction for the drugs in his sock, for which there was independent overwhelming evidence. *See, e.g., United States v. Obregon,* 893 F.2d 1307, 1310–11 (11th Cir.1990). The prosecutor, following the district court's instruction in response to a defense request, did not refer to the "confessional" statement in closing argument.

██ Hence, any prejudice flowing from the prosecutor's statements in opening and closing arguments was mitigated either because, as with Small's unemployed status, the matter was not central to guilt and fairly innocuous in context, or because nothing in the record suggests that the jury did not follow the instructions that arguments of counsel were not evidence. *See generally Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). As the Supreme Court has observed:

> Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given.... [I]t does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial.

*Frazier,* 394 U.S. at 736, 89 S.Ct. at 1423. For these reasons, we find no prejudicial error by the prosecutor in arguments to the jury requiring reversal of Small's conviction.

### III.

██ Federal Rule of Criminal Procedure 16 requires that the government apprise the defense of (1) a relevant written or recorded statement by the defendant, (2) a relevant written record of a defendant's oral statement in response to government interrogation, and (3) the substance of a relevant oral statement by the defendant if the government intends to use the statement at trial.[1]

---

1. Rule 16 of the Federal Rules of Criminal Procedure requires the government to disclose:

   any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; [and] that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any

On appeal, Small contends that the district court abused its discretion in denying a mistrial upon introduction of evidence that Small "just kind of put his head down" in response to Inspector Cook's statement, after finding the drugs in the sock, "James, I am ashamed of you." Small maintains that this gesture was a "statement" within the meaning of Rule 16, to which he was entitled during discovery. First, he asserts that it was a recorded statement by the defendant because Inspector Cook testified that the activities in the Amtrak holding cell were video recorded, but that the tape was inadvertently destroyed before he had time to look at it. Second, Small maintains that if Inspector Cook wrote down the substance of his conversation with Small, then the investigator's notes were a written record of an oral statement. Third, Small contends that the gesture itself was the substance of an oral statement that the government intended to use at trial. Small thus maintains that the government was obligated to disclose its intent to use the gesture against him because the prosecutor's purpose in introducing the non-verbal conduct was to imply a communicative content, indicating guilt. We find no abuse of discretion by the district court in refusing to grant a mistrial. *See United States v. Burroughs,* 935 F.2d 292, 295 (D.C.Cir.1991); *United States v. Caudill,* 915 F.2d 294, 299 (7th Cir.1990).

■■■ It is unclear whether Rule 16 could reach non-verbal communicative conduct. Because Small has made no showing that at the time of discovery the prosecution had a video recording or the inspector's notes in its possession, Small's claim turns on whether his gesture was an "oral statement." Relying on the plain meaning of the term "oral," the government maintains that this provision

of Rule 16 applies only to spoken verbal communication. Although the prosecution has a disclosure obligation for both "oral" and "written" statements, the government's position is that Rule 16 does not encompass non-verbal communication. Small points out that because non-verbal communicative conduct falls within the scope of the Fifth Amendment privilege on self-incrimination, *Pennsylvania v. Muniz,* 496 U.S. 582, 594–95 & n. 9, 110 S.Ct. 2638, 2646–47 & n. 9, 110 L.Ed.2d 528 (1990), excluding such non-verbal communication from Rule 16 would thwart one of the purposes of the rule, namely to "facilitate the raising of objections to admissibility prior to trial." Fed.R.Crim.P. 16(a)(1)(A) advisory committee's note (1974 Amendment). Although the government is correct that Small may not have intended his conduct in lowering his head to be testimonial, *cf. Muniz,* 496 U.S. at 590–94, 110 S.Ct. at 2644–46, Small notes that the prosecution's likely purpose for introducing the evidence was to imply a communicative statement. *Cf.* Fed.R.Evid. 801(a).

■■■ However, we need not decide whether Rule 16 generally encompasses physical gestures because Small's physical gesture was so ambiguous and non-communicative that it did not trigger a Rule 16 obligation.[2] Although Small claims that counsel would have moved to suppress the "statement" on Fifth Amendment grounds, there is serious question whether the physical act at issue was sufficiently testimonial to implicate a *Miranda*[3] objection. *Cf. Muniz,* 496 U.S. at 594–95, 110 S.Ct. at 2646–47; *United States v. Payne,* 954 F.2d 199, 203 (4th Cir.), *cert. denied,* 503 U.S. 988, 112 S.Ct. 1680, 118 L.Ed.2d 396 (1992). Moreover, Small has not "demonstrate[d] that the untimely disclosure of the statement adversely affected

person then known to the defendant to be a government agent.... The government shall also disclose to the defendant the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a government agent if the government intends to use that statement at trial.

Fed.R.Crim.P. 16(a)(1)(A).

**2.** In addition, it is far from clear that Cook should have known that his statement "James, I am ashamed of you" was "reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). *See supra* n. 1 (Rule 16 requires disclosure of "oral statement made by the defendant ... in response to interrogation").

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

some aspect of his trial strategy." *United States v. Adeniji*, 31 F.3d 58, 64 (2d Cir. 1994). As Small's counsel moved for a mistrial, or in the alternative that the reference to Small's reaction to the officer's statement be stricken from the record, there appears no reason why Small's counsel could not also have moved to suppress the statement on Fifth Amendment grounds as he now claims he would have.[4] Nor has Small suggested that he would have presented a different defense or entered a plea had he known that the government would introduce this evidence. In addition, Small has not suggested how the single reference to his lowering his head had any impact on the "core defense theory at trial" that the officers were mistaken or lying. *United States v. Brodie*, 871 F.2d 125, 130 (D.C.Cir.1989); *cf. United States v. Lewis*, 511 F.2d 798, 802 (D.C.Cir. 1975). Thus, Small has failed to show either a Rule 16 violation or the requisite prejudice. *See Brodie*, 871 F.2d at 130–31; *Caudill*, 915 F.2d at 299–300.

## IV.

■■■■■ Rule 32 of the Federal Rules of Criminal Procedure ensures that the defendant has an opportunity to challenge information to be used against him at the time of sentencing. *United States v. Helmy*, 951 F.2d 988, 998 (9th Cir.1991), *cert. denied*, 504 U.S. 945, 112 S.Ct. 2287, 119 L.Ed.2d 211 (1992). Yet Small's contention that the district court abused its discretion in refusing to postpone sentencing to allow the drugs to be reweighed is unpersuasive. *See United*

States v. Upshaw, 918 F.2d 789, 791 (9th Cir.1990) (standard of review), *cert. denied*, 499 U.S. 930, 111 S.Ct. 1335, 113 L.Ed.2d 266 (1991).

■■■■■ On appeal, Small maintains that a reweighing of the drugs in the sock might have revealed a quantity below 50 grams, making his statutory minimum sentence five years instead of ten. *See* 21 U.S.C. § 841(b)(1). Although Small protests that he preserved this issue for appeal, the record reveals otherwise.[5] Before the district court, Small's counsel argued only about the sentencing range under the sentencing guidelines. At the sentencing hearing, Small's counsel explained that, "if it should ever be decided by an appeal[s] court the defense's position is correct and that the material in the bathroom should not have been used as relevant conduct, then obviously the weight of the material in his socks becomes relevant." When the district court indicated that it could not understand the basis for a reweighing or what difference it would make in the guidelines, Small's counsel informed the court that, "It would not make a difference unless I'm right about the relevant conduct." By failing to articulate the argument urged on appeal, that the weight of the drugs found in the sock alone might affect his mandatory minimum sentence under the statute,[6] and by conceding at trial and on appeal that a reweighing is irrelevant under the guidelines unless the district court's decision to consider relevant conduct under the guidelines was

---

**4.** Small cannot raise the Fifth Amendment claim now because by failing to request suppression at the time he has waived this claim. *See, e.g., United States v. Mitchell*, 783 F.2d 971, 975 (10th Cir.), *cert. denied*, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986).

**5.** Small's counsel attempted prior to sentencing to have the drugs reweighed. The district court issued two subpoenas for the Drug Enforcement Administration chemist to appear in court with his scales, and although no motion to quash was made, the chemist failed to appear in court on the day of sentencing. The district court properly admonished the prosecutor for failing to ensure the Administration's compliance with the subpoena, *see United States v. Ryan*, 402 U.S. 530, 532–33, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971); Fed.R.Crim.P. 17(g), and both counsel

for failing to cooperate with each other to ensure the reweighing occurred. However, the district court also noted that because the failure to have the drugs from the socks reweighed would have no effect on application of the sentencing guidelines, the sentencing should proceed. *See* U.S.S.G. § 1B1.3(a) and n. 7, *infra*.

**6.** We need not reach the question whether acquitted conduct can be considered in determining statutory mandatory minimum sentences. There is a split among the circuits. *Compare United States v. Rodriguez*, 67 F.3d 1312, 1324 (7th Cir.1995), *United States v. Estrada*, 42 F.3d 228, 230 (4th Cir.1994) *and United States v. Darmand*, 3 F.3d 1578, 1581 (2d Cir.1993) *with United States v. Reyes*, 40 F.3d 1148, 1151 (10th Cir.1994).

overturned,[7] Small has waived his claim that the district court erred in not having the drugs reweighed for that purpose. *See United ed States v. Manarite*, 44 F.3d 1407, 1419 & n. 18 (9th Cir.1995); *United States v. Farmer*, 924 F.2d 647, 654 (7th Cir.1991); *United States v. Visman*, 919 F.2d 1390, 1393–94 (9th Cir.1990), *cert. denied*, 502 U.S. 969, 112 S.Ct. 442, 116 L.Ed.2d 460 (1991); *see also United States v. Mitchell*, 951 F.2d 1291, 1296–97 (D.C.Cir.1991), *cert. denied*, 504 U.S. 924, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992).

Moreover, Small has failed to show that there is any error involving "extraordinary circumstances 'affect[ing] substantial rights and result[ing] in a miscarriage of justice,'" that is, an obvious error that seriously affects the fairness or integrity of the judicial process. *United States v. Johnson*, 802 F.2d 1459, 1465 & n. 15 (D.C.Cir.1986) (quoting *United States v. Johnson*, 722 F.2d 407, 409 (8th Cir.1983)); *see also United States v. Barrows*, 996 F.2d 12, 14 (1st Cir.1993). Under the sentencing guidelines, parties must be given an "adequate opportunity" to present information when any factor important to sentencing is in "reasonable dispute." U.S.S.G. § 6A1.3(a); *United States v. Garcia*, 900 F.2d 571, 574 (2d Cir.1990). The sentencing court, in turn, is to determine the appropriate procedure for gathering evidence in light of the nature of the dispute, suggesting that only where there is a "reasonable dispute" over the weight of the drugs would the district court abuse its discretion by refusing to order a reweighing. *Garcia*, 900 F.2d at 574. Here, Small's counsel failed to alert the district court until the day of sentencing to any problem with reweighing the drugs, which the district court stated it had assumed would occur prior to the sentencing hearing itself. Then, at the sentencing hearing, in requesting a postponement to allow a reweighing of the drugs, Small's counsel proffered no reason for his belief that the weight was inaccurate. Consequently, he failed to lay a foundation to rebut the otherwise reliable evidence of the weight of drugs in the sentencing report. *See United States*

*v. Zuleta–Alvarez*, 922 F.2d 33, 36 (1st Cir. 1990), *cert. denied*, 500 U.S. 927, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991); *United States v. Upshaw*, 918 F.2d 789, 792 (9th Cir.1990). Although Small's counsel explained to the district court that she could not give any reason for the belief of inaccuracy without violating the attorney-client privilege or prejudicing Small's appeal, the requirement of a "reasonable dispute," U.S.S.G. § 6A1.3(a), would be undermined were the court to presume the existence of such a dispute where the sole challenge to otherwise reliable and competent evidence is the general invocation of a privilege. *See Zuleta–Alvarez*, 922 F.2d at 36–37; *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991).

The district court made a reasoned factual determination that the government had proved the weight of the drugs. *See Estrada*, 42 F.3d at 231; *Zuleta–Alvarez*, 922 F.2d at 37. Before the court were the sentencing report, the laboratory report, and the testimony of the DEA chemist, whom Small's counsel cross-examined and whose testimony the district court found credible. *See, e.g., United States v. Wagner*, 994 F.2d 1467, 1473 (10th Cir.1993). In the absence of a foundation to indicate the need for reweighing the drugs and given the reliability of the chemist's testimony and the lab report, the district court did not abuse its discretion by refusing to postpone sentencing. Even at this late date, Small has failed to proffer any basis for thinking that the weight was mistaken. *See Garcia*, 900 F.2d at 574–75. We thus find no error by the district court in declining to postpone sentencing. *Upshaw*, 918 F.2d at 791; *see also* FED.R.CRIM.P. 32(c)(3)(A).

Accordingly, we affirm the judgment of conviction.

---

7. The district court could properly consider conduct for which a defendant was acquitted that was part of the same course of conduct as the conduct underlying the conviction in determining the applicable sentence under the sentencing guidelines. *United States v. Boney*, 977 F.2d 624, 635–36 & n. 11 (D.C.Cir.1992) (citing U.S.S.G. § 1B1.3(a)(2)).