# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 11, 2013         Decided July 16, 2013

No. 11-3086

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTONIO VALDEZ, ALSO KNOWN AS TONY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00281-10)

*Dennis M. Hart*, appointed by the court, argued the cause and filed the briefs for appellant.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *John K. Han*, Assistant U.S. Attorneys.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Appellant Antonio Valdez appeals his conviction for drug conspiracy and his 240-month sentence, claiming errors by the district court, improper closing argument by the government, and unresolved sentencing issues. For the reasons stated below, we affirm the judgment of the district court.

## Background

In 2009 law-enforcement authorities received information that Mouloukou Toure was dealing heroin in the Washington, D.C. area. The authorities wiretapped Toure's phone and conducted surveillance of his movements, noticing that Toure interacted with appellant Antonio Valdez (known as "Tony") and an acquaintance of Valdez, David Diaz Garcia. Subsequently, Valdez and several others, including Toure and Diaz Garcia, were arrested and charged with, *inter alia*, conspiracy to distribute heroin. After being arrested, Valdez and Diaz Garcia were incarcerated in the same jail cell, at which time Valdez allegedly threatened Diaz Garcia in an attempt to prevent him from cooperating with authorities. Valdez was subsequently indicted on counts of narcotics conspiracy and witness tampering. Before trial, Valdez moved to sever the drug conspiracy charge from the witness tampering charge. The district court denied the motion.

During trial, Toure and Diaz Garcia, both of whom had pleaded guilty and cooperated with the government, testified against Valdez. Intercepted phone calls between the conspirators were played for the jury, including one between Valdez and Toure in which Toure called Valdez "Montana." Also introduced during trial was an arrest record of Valdez in 2004 in Maryland for distribution of cocaine. During closing arguments the prosecutor, after reminding the jury that Toure had called Valdez "Montana" in one of the intercepted phone

calls, made reference, over defense counsel's objection, to: the movie "Scar Face;" the character played by Al Pacino, Tony Montana; and Tony Montana's role in the drug business. Valdez was found guilty by the jury of narcotics conspiracy but acquitted of the witness tampering charge. At sentencing, discussions were held concerning Valdez's eligibility for a safety valve exemption and/or a *Smith* departure as a deportable alien. In the end, the district court sentenced Valdez to the statutory mandatory-minimum of 240 months.

Valdez appeals, arguing that the district court committed two reversible errors; that the government made improper remarks during its closing argument; and that two sentencing issues were left unresolved.

## Discussion

### Alleged Errors by the District Court

Valdez asserts that the district court committed two errors, each of which requires that his conviction be reversed. The first error alleged by Valdez is that the district court should not have permitted the government to introduce evidence, pursuant to Fed. R. Evid. 404(b), of prior drug activity by Valdez unrelated to the charges in this case. The prior drug activity concerned a 2004 conviction in Maryland for distributing cocaine. The district court allowed the conviction to be introduced as relevant to issues of Valdez's knowledge and intent in the drug charge. Valdez argues that knowledge and intent were not disputed, and that the true use of the prior drug charge was to suggest that Valdez was inclined to deal drugs, in violation of the requirements of Rules 404(b) and 403.

The second alleged error committed by the district court was the denial of Valdez's motion requesting that the drug

conspiracy charge and the witness tampering charge be severed for purposes of trial. In denying the motion, the district court determined that if there were separate trials, evidence of each charge would be allowed in each trial for the purpose of proving Valdez's guilt on each charge. Consequently the court ruled that severance was not required. Valdez argues that the drug conspiracy verdict was impermissibly tainted by the jury's knowledge of the witness tampering allegation.

Our review of both of these claims of error is for abuse of discretion. *See United States v. Pettiford*, 517 F.3d 584, 588 (D.C. Cir. 2008) (a claim that a district court improperly admitted evidence under Rule 404(b) reviewed for abuse of discretion); *United States v. Gooch*, 665 F.3d 1318, 1326 (D.C. Cir. 2012) (a district court's denial of a motion to sever counts reviewed for abuse of discretion). In both instances the district court gave reasoned explanations for its decisions. In both instances limiting instructions were given to the jury on use of the evidence introduced. We conclude that the district court did not abuse its discretion on either claim of error.

Government's Arguments to the Jury

In the government's initial closing argument, the prosecutor played an intercepted call between Valdez and Toure in which Toure addressed Valdez as "Montana." The prosecutor then argued, "Why Montana? Here's the hint. What character did Al Pacino play in the drug movie Scar Face." Defense counsel objected, and the district court overruled the objection. The prosecutor continued:

> Out of all the Tonies to call Mr. Valdez, [Toure] calls him Tony Montana, the character in Scar Face who was leading the drug business there . . . [I]n this case, because of the association and relationship between

Toure and Mr. Valdez, which is one of a drug nature, he makes a drug reference and calls him Tony Montana.

Valdez argues that this comparison made by the prosecutor was an assumption based on no evidence that was produced at trial. Toure was never asked during his testimony about this reference, and there was no evidence linking Toure's calling Valdez "Montana," or Valdez himself, to the movie character. Citing *United States v. Maddox*, 156 F.3d 1280 (D.C. Cir. 1998), Valdez argues that it is well established that counsel in closing argument may not refer to, or rely upon, evidence unless the trial court has admitted it. Valdez contends that these improper remarks by the prosecutor were especially prejudicial in that the only direct evidence of Valdez's membership in the conspiracy was the testimony of Toure and Diaz Garcia, who were contradictory to each other on their own roles and were attempting to work off their own liabilities and sentences by testifying for the government. Taking all of this into consideration, Valdez argues, his guilty verdict should be set aside and a new trial ordered.

As we noted some time ago in *United States v. Small*, 74 F.3d 1276, 1282 (D.C. Cir. 1996), our decision in "*Gaither* [*v. United States*, 413 F.2d 1061, 1079 (D.C. Cir. 1969)] has long made clear that the prosecutor may not refer in the opening or closing statement to evidence not admitted at trial." Here, we agree with Valdez that no factual basis for the prosecutor's comments was made during trial and that these remarks by the prosecutor were improper.

We review improper prosecutorial argument for substantial prejudice. *United States v. Moore*, 651 F.3d 30, 50 (D.C. Cir. 2011). Our task is to "'carefully examine the error committed to determine whether it sufficiently prejudiced [the defendant]

to call for reversal.'" *Small*, 74 F.3d at 1280 (quoting *Gaither*, 413 F.2d at 1079). In *Small* we identified three factors in assessing prejudice: "'the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error.'" 74 F.3d at 1280 (quoting *Gaither*, 413 F.2d at 1079). In this instance, the case against Valdez was strong. The government's evidence included the testimony of Valdez's co-conspirators that Valdez was a lower-level heroin dealer. This testimony was corroborated by intercepted phone calls and police surveillance. For the same reasons, the prosecutor's reference to "Tony Montana . . . who was leading the drug business there" was not central to the government's proof of guilt. *See Small*, 74 F.3d at 1284. Furthermore, the "Montana" reference was brief, made in passing by the prosecutor during his closing argument. Finally, steps were taken by both the prosecutor and the district court to mitigate the effects of the prosecutor's comments. During the government's rebuttal argument, the prosecutor reminded the jury that:

> Tony Montana is not my words; it's the words of [Valdez's] partner, Toure. He called him Tony Montana, not me . . . In the grand scheme of things, [Valdez is] not the big player. We never said he was.

Additionally, the district court instructed the jury at the beginning of trial and in its final instructions that the jury could only consider evidence admitted into evidence at trial and that the arguments of counsel were not evidence. We conclude that the prosecutor's improper remarks did not substantially prejudice Valdez.

But although we find no substantial prejudice in the prosecutor's remarks, we remind the United States Attorney of the Supreme Court's admonition that "[the United States Attorney] may prosecute with earnestness and vigor – indeed, he

should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones . . . [I]mproper suggestions [and] insinuations . . . are apt to carry much weight against the accused when they should properly carry none." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Sentencing

Valdez argues that his case should be remanded to the district court for a rehearing on sentencing.  He claims that he is entitled to a rehearing because two sentencing issues went unresolved.  The first alleged unresolved issue was whether he was entitled to safety-valve relief pursuant to 18 U.S.C. § 3553(f), which permits the sentencing court to impose a sentence below the statutory mandatory-minimum term when a defendant, *inter alia*, "has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  We need not consider this issue long, since at Valdez's sentencing hearing it was clear that Valdez "did not successfully debrief with the government" and "may want to debrief later on." Sentencing Transcript, Sept. 12, 2011, at 10.  Consequently, Valdez has not fulfilled all the requirements of § 3553(f), and therefore is not entitled to safety-valve relief.  Alternatively, Valdez suggests that his trial counsel failed to argue the safety-valve issue with appropriate vigor, and consequently his counsel was ineffective.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  But Valdez was not entitled to safety-valve relief, and consequently his trial counsel was not ineffective in not arguing the issue with more vigor. *See United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992) (citation omitted) ("[A] lawyer is not 'ineffective' when he fails to file a meritless motion.").

The second alleged unresolved issue was whether, as a deportable alien, Valdez was entitled to a sentencing departure under *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). In *Smith* we held permissible a "depart[ure] below the range indicated by the Sentencing Guidelines where the defendant, solely because he is a deportable alien, faces the prospect of objectively more severe prison conditions than he would otherwise." *Smith*, 27 F.3d at 649. *Smith*, then, concerned a sentencing departure from the *Sentencing Guidelines*, whereas here Valdez requested a departure from a sentence that was a *statutory mandatory-minimum*. The district court correctly opined that it did not have the discretion to award a *Smith* departure of any length beneath the statutory minimum. A district court is authorized to impose a sentence below the statutory mandatory-minimum only when a defendant offers substantial assistance to the government, *see United States v. Motley*, 587 F.3d 1154, 1159-60 (D.C. Cir. 2009) (citing 18 U.S.C. § 3553(e)), or is eligible for safety-valve relief, *see United States v. Gales*, 603 F.3d 49, 52 (D.C. Cir. 2010) (citing 18 U.S.C. § 3553(f)). As is evident from our discussion of the first issue, Valdez does not meet those criteria. The district court properly followed the statute by not imposing a sentence reflecting the *Smith* departure.

## Conclusion

For the reasons stated above, the judgment of the district court is affirmed.