**UNITED STATES of America, Appellee,**

v.

**Edward MADDOX, Appellant.**

No. 97–3082.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1998.

Decided Oct. 9, 1998.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender. Neil H. Jaffee, Assistant Federal Public Defender, entered an appearance.

Chrisellen R. Kolb, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Thomas J. Tourish, Jr., and Mary B. Murphy, Assistant U.S. Attorneys.

Before: SILBERMAN, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The principal issue in this appeal is whether the conviction of Edward Maddox, after a jury trial, for unlawful possession of a firearm by a felon (18 U.S.C. § 922(g)) should be set aside because of the prosecutor's improper closing argument.

Maddox's trial lasted less than an hour. The government presented one witness, the defense none. Officer Riddle testified that he and six other officers drove in three police cars to an area known for narcotics trafficking and violence. Riddle said he spotted Maddox and two other men at the end of a cul-de-sac. As the cars approached, the men dispersed. Maddox began walking through a parking lot, towards the street. Riddle testified that he saw Maddox drop something shiny. With Maddox only a few feet away, Riddle left his car and retrieved the object—a key on a key ring with the insignia of the Enterprise car rental company. Riddle looked over the cars in the lot, matched the key to an unlocked Mazda 626 and proceeded to search the car. Under the driver's seat, he discovered a loaded 9 mm. semi-automatic pistol; in the glove compartment, he found several signed Enterprise rental agreements for the car naming Maddox as the lessee; in the console between the two front seats he found Maddox's driver's license.

Cross-examination of Riddle revealed that no fingerprints were found on the pistol; that no one took fingerprints from the inside of the car; that Riddle never saw Maddox in the car; that the key and key ring had "not been preserved as evidence" (Tr. 122); and that at the time Riddle said he was retrieving the key ring, most of the other six officers had already gotten out of their cars. Defense counsel also sought to impeach Riddle with a prior inconsistent statement regarding whether he had instructed Maddox to "stop."

The prosecution and defense had entered into three stipulations, which the prosecutor read to the jury at the close of the evidence: the Enterprise leasing agreements found in the car were true and accurate copies of records maintained in the regular course of business; the pistol had been manufactured in Massachusetts; and Maddox had a prior conviction for a crime punishable by imprisonment for more than a year.

■ In her closing argument, the prosecutor told the jury:

[PROSECUTOR:] Where are the keys? Are the keys the key to the case? No. If your car gets stolen and somebody comes to me and tells me I need to prosecute the person who stole my car, and we find a guy driving your car, ladies and gentlemen, is the suggestion that I need to impound your car for a year until we get around to trying the case? No, ladies and gentlemen. You give the property back to its rightful owner.

[DEFENSE COUNSEL]: Objection, Your Honor. There is no evidence of that.

THE COURT: Overruled.

[PROSECUTOR]: You give the property back to its rightful owner. And why? Enterprise rental owned that car. It went back to its owner, ladies and gentlemen.

■ The district court erred in overruling the objection. The prosecution had introduced no evidence regarding what happened to the car and to the key and key ring after Maddox's arrest. We have held many times before, and we hold once again, that in closing argument counsel may not refer to, or rely upon, evidence unless the trial court has admitted it. *See, e.g., United States v. Small,* 74 F.3d 1276, 1280 (D.C.Cir.1996); *United States v. Boyd,* 54 F.3d 868, 871 (D.C.Cir.1995); *United States v. Foster,* 982 F.2d 551, 555 (D.C.Cir.1993); *United States v. Teffera,* 985 F.2d 1082, 1088, 1089 n. 6 (D.C.Cir.1993). The reasons are obvious. The practice disregards, indeed violates, the rules governing the admission of evidence. Typically, the attorney's statements amount to blatant hearsay about matters not in the record. The transgressing attorney makes himself an unsworn witness. And when it is the prosecutor who goes outside the record, the effect is to deprive the defendant of his right to cross-examine the witnesses against him. *See* Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 24.5 (2d ed.1992).

■ None of what we have written thus far is meant to preclude prosecutors (or defense counsel) from referring to matters of common public knowledge or human experience. But the prosecutor's statements in this case were of a different sort. It is not common knowledge, and for all we know it may not even be true, that the police customarily return car keys having evidentiary value to the owners of the cars. It seems far more likely that the police would retain the key pending trial and give the owner a duplicate if one were needed. At any rate, the prosecutor's representations went beyond anything amounting to common understanding. She tried to convince the jury that the key to this particular rental car had been returned to the Enterprise rental company, a matter unsupported by any evidence. And the prosecutor doubtless employed this tactic because, an hour earlier, defense counsel's opening statement stressed the fact that the key was missing.

Still, if this had been the prosecutor's only misstep we would be inclined to sustain the conviction. The defense never disputed that officer Riddle seized a key to the Mazda and, given the rental agreements designating Maddox as the lessee, it seems beyond doubt that the key came from the defendant. The prosecutor's improper remarks had the effect of diminishing the value of the missing evidence instruction the trial judge gave to the jury—that they were permitted to draw an adverse inference from the government's failure to produce the key and key ring. But we cannot see how the instruction would have been of much assistance to the defense even if the prosecutor had confined her summation to the evidence.

■ After the prosecutor finished, defense counsel addressed the jury. Making the most of the little he had to work with, counsel attacked Riddle's testimony about the defendant's dropping of the key ring. This was a critical piece of evidence. It tended to show the defendant's guilty knowledge: Maddox must have discarded the key because he knew the car contained something incriminating, something he did not want the police to discover. Unless the jury disbelieved officer Riddle on this subject, defense counsel had no prospect of convincing the jury—as he attempted to do—that because the car was unlocked in an area notorious for crime, anyone could have placed the pistol under the seat without Maddox knowing it, or that someone else could have been using the car after borrowing it from Maddox. And so defense counsel pounded away:

Mr. Maddox doesn't go away from the police.... What does he do? What does the person do that has the keys to the rental car, the keys that you don't have? What does he do? He walks right towards the police and drops them essentially right in front of the police. It is simply preposterous, ladies and gentlemen. It is simply preposterous. It did not happen. It did not happen. It is not corroborated by any testimony whatsoever. Why? Well, there is only one person who testified.

Shortly into her rebuttal, the prosecutor countered:

If [defense counsel] for one minute believed that these names over here, that these officers—Royster, Queen, Latson, McGee, Littlejohn and Jones—what is the matter with the government, why didn't they ... take up three days of your time and call every one of these officers and make them say the same thing up there and make you guys stay here longer?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

[PROSECUTOR]: Why didn't they do that? You should infer that they've got something to hide because they didn't call those people, [defense counsel] says. Well, Edward Maddox doesn't have any obligation to call a case, but, ladies and gentlemen, use your common sense. If [defense counsel] believed that any of those officers, whose names he knew—if he thought any of those officers would contradict what Investigator Riddle said, do you think you would have heard from them? You heard nothing contradicting that officer's testimony because I submit to you, ladies and gentlemen, that nobody's testimony would have. And hearing four days' worth of the same thing may have been exciting for some of you, but I doubt it.

In other words, each of the other six officers would have confirmed what Riddle had told the jury; and the jurors could thank the prosecutor for not calling those officers to the stand and wasting three or four days of the jurors' valuable time.

▉ The prosecutor crossed well over the line between the permissible and the impermissible, as the government now admits. Why the district court refused to sustain the defense objection is beyond us. When a prosecutor starts telling the jury about what other potential witnesses would have said if the government had only called them, it is time not merely to sustain an objection but to issue a stern rebuke and a curative instruction, or if there can be no cure, to entertain a motion for a mistrial. That the trial was so short and so simple made the prosecutor's improper remarks all the more potent. *Contrast Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Brecht v. Abrahamson,* 507 U.S. 619, 639, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The defense had attacked Riddle's credibility, especially his testimony about the dropping of the key. Yet the prosecutor's rebuttal improperly propelled the jury into believing everything Riddle had told them. How could the jury disbelieve Riddle when a half-dozen other officers on the scene agreed entirely with his version of the events? The judge's refusal to sustain the objection, done in open court, only made matters worse. Jurors unschooled in the proprieties of closing argument may have thought the defense was objecting to the accuracy of the prosecutor's representations. If so, the court's overruling of the objection signified that the prosecutor had correctly described what the missing witnesses would attest. Maddox did not mount much of a defense, but he was entitled to present his case to the jury without the extra burden of having to overcome six additional adverse witnesses at a point when the evidence had closed. The right to cross-examine is a "substantial" right of every defendant. The law requires us to disregard errors and irregularities that do "not affect substantial rights," FED.R.CRIM.P. 52(a); 28 U.S.C. § 2111, but the errors of the trial judge and the prosecutor are not of that sort. Can we be sure that the prosecutor's improper rebuttal and the court's erroneous overruling of the defense objection "did not influence the jury" or had only a "very slight effect"? *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). No, we cannot be sure of any such thing. It may well be that in a trial uninfected by the sort of overreaching that took place here, Maddox would have been convicted. But that is not the correct harmless-error inquiry. *See United States v. Smart,* 98 F.3d 1379, 1391 (D.C.Cir.1996); *see also* Harry T. Edwards, *To Err is Human, But Not Always Harmless: When Should Legal Error Be Tolerated?,* 70 N.Y.U. L.REV. 1167, 1199–1206 (1995). The question is "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error," *Sullivan v. Louisiana,*

508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), and because that question must be answered in the negative, the defendant's conviction cannot stand. The judgment of conviction is reversed and the case is remanded for a new trial.

*So ordered.*