Linda DOREN, Plaintiff–Appellant,

v.

**BATTLE CREEK HEALTH SYSTEM,**
Defendant–Appellee.

No. 98–1742.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1999.

Decided Aug. 18, 1999.

Michael C. Bingen (briefed), Stephen M. Rice (argued and briefed), Silverman,

Smith & Bingen, Kalamazoo, Michigan, for Plaintiff–Appellant.

Richard D. Fries (argued and briefed), Eric J. Guerin (briefed), Varnum, Riddering, Schmidt & Howlett, Kalamazoo, Michigan, for Defendant–Appellee.

Before: MARTIN, Chief Judge; JONES and SUHRHEINRICH, Circuit Judges.

## OPINION

BOYCE F. MARTIN, JR., Chief Judge.

Linda Doren appeals the district court's grant of summary judgment for her employer, Battle Creek Health System, arguing that she is disabled under the Americans with Disabilities Act. We conclude that she is not disabled under the Act and affirm the district court's grant of summary judgment.

### I.

Linda Doren, a forty-six year old woman, worked as a Registered Nurse for twenty-six years at Battle Creek. Doren suffers from recurrent tendinitis in multiple joints, chondromalacia of both knees, sub-patellar crepitus and pain, fascitis of both feet, and low back radiculopathy. She also suffers from a gastric ulcer that prohibits her from taking aspirin or Tylenol to relieve the pain.

During her employment at Battle Creek, Doren worked eight-hour shifts in the pediatrics department. In 1989, Battle Creek began allowing nurses to work twelve-hour shifts on a voluntary basis. By April 1995, Doren was the only remaining pediatrics nurse working eight-hour shifts. During the fall of 1995, Battle Creek conducted a review process to improve efficiency. The review revealed that Doren's lone eight-hour shift created a hole in the daily schedule. Initially, the charge nurse in the pediatrics department asked Doren to work twelve-hour shifts, which Doren refused because of her medical conditions. Battle Creek then tried to eliminate the hole by switching Doren to different eight-hour shifts. When that did not work, Battle Creek again approached Doren about working twelve-hour shifts. Doren again refused.

On December 4, Doren submitted a Request for Accommodation form provided by the hospital's Human Resources Department. Doren requested:

> Eight hour shift, 40 hours per week. Due to increase in joint pain, swelling and fatigue in late afternoon, I request to be left on the 6:45 a.m. to 3:15 p.m. shift with no more than four days in succession. This represents no change in my current schedule. I have worked these hours since August, 1975.

William B. Comai, M.D., Doren's treating physician, signed the request, diagnosing Doren with "subpatellar crepitus right knee due to past trauma to knee," referring to a car accident in 1981. Battle Creek requested more information from Doren and scheduled an appointment with one of the hospital's doctors, Thomas Lipps, M.D., who agreed with the eight-hour shift limitation.

On May 21, 1996, Battle Creek informed the staff that the pediatrics department would be converting entirely to twelve-hour shifts. Battle Creek informed Doren that her eight-hour shift would be eliminated, but that she could keep her position as a regularly scheduled nurse in pediatrics and would be assured the preferred 7 a.m. to 7 p.m. shift. Battle Creek also informed Doren that she could bid on several eight-hour openings elsewhere in the hospital and urged her to at least try the twelve-hour shift. Doren declined to attempt the twelve-hour shift, although Dr. Comai testified that he would have told Doren to go ahead and try if she had suggested it to him. Battle Creek allowed Doren to continue in her job until they filled the twelve-hour position. Doren claims that she attempted to inquire about other positions within the hospital, but that no one returned her calls. Battle Creek,

on the other hand, asserts that Doren "refused" to accept any other nursing jobs in the hospital.

On August 16, Battle Creek replaced Doren with a twelve-hour shift nurse. Battle Creek gave Doren a ninety-day leave of absence to find another job and subsequently extended her leave an additional ninety days when she was unable to do so. Battle Creek claims that Doren did not make an effort to locate another job. Battle Creek notified Doren on January 20, 1997 that if she did not bid on any of the several available jobs in the hospital, she would be considered to have voluntarily resigned as of February 12.

Doren filed a Charge of Discrimination with the Equal Employment Opportunity Commission. James R. Neely, Jr., acting for the Commission, dismissed the charge on December 5, 1996, because the Commission was unable to find any violation of the Americans with Disabilities Act. Doren filed her complaint in the district court on March 4, 1997. Battle Creek moved for, and the district court granted, summary judgment on the grounds that Doren was not "disabled" within the meaning of the Americans with Disabilities Act.

## II.

This Court reviews a district court's grant of summary judgment *de novo.* *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1176 (6th Cir.1996). A grant of summary judgment is appropriate if no genuine issue of material fact exists and one party is entitled to judgment as a matter of law. *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989). A "genuine issue of material fact" is one which, if proven at trial, would result in a reasonable jury finding for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ The Americans with Disabilities Act prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a prima facie case under the Act, a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) her employer knew or had reason to know of the disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *See Monette,* 90 F.3d at 1185.

Although the issue of whether Battle Creek should have allowed Doren to continue working eight-hour shifts may better be addressed under the question of reasonable accommodation, we must take the case as it was presented to the lower court. Therefore, we will first address whether Doren was disabled under the Act.

■ An individual is considered disabled under the Act if he or she has a "physical or mental impairment that substantially limits one or more of the major life activities ... [or is] regarded as having such an impairment." 42 U.S.C. § 12102(2). Under the Act, working qualifies as a "major life activity." 29 C.F.R. § 1630.2(i). With respect to working, the term "substantially limits" means:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Id.* at (j)(3)(i). In the context of working, a court may also consider:

(A) The geographical area to which the individual has reasonable access; (B) The job from which the individual has been disqualified ... and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) The job from which the individual has been disqualified ... and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* Doren bears the burden of establishing as an element of her prima facie case the existence of an impairment that substantially limits a major life activity. *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 (6th Cir.1985).

■ Doren argues that she presented evidence creating a genuine issue of fact regarding whether she is disqualified from performing many positions in the field of nursing, asserting that her medical conditions render her unable to work on the adult floor of a hospital. Robert Ancell, Ph. D., who also examined Doren, stated in his affidavit that, "[g]iven the physical demands of the work in light of what's been written [about Doren's medical conditions], I would say, no, she would not be able to perform the duties on an adult floor."

However, in *McKay v. Toyota Motor Manuf. U.S.A., Inc.*, 110 F.3d 369 (6th Cir.1997), this Court rejected a similar argument and upheld the district court's judgment for the defendant. In that case, the plaintiff argued that carpal tunnel syndrome rendered her unable to work at a job requiring medium or heavy lifting. This Court in *McKay* concluded that where the plaintiff's present job did not require medium or heavy lifting, "one is hard pressed to comprehend how [plaintiff] could have been regarded as a 'qualified individual' with respect to medium and heavy work." *Id.* at 373.

Similarly, Doren's present job does not require her to work with adult patients. Dr. Ancell testified that besides being physically unable to perform the duties of a nurse on the adult floor, Doren was not qualified to do so. "[T]his lady has never worked in an adult unit in her entire career, except in nursing school, as far as I know." Doren was not qualified to work on the adult floor of a hospital. Therefore, testimony regarding her inability to work with adult patients cannot establish that she is unable to perform many positions in the field of nursing.

Additionally, Doren failed to produce any evidence regarding the number of pediatrics nursing jobs from which she is excluded or the availability of pediatric nursing positions for which she is qualified. Doren asserts that Dr. Ancell's Vocational Rehabilitation Evaluation and supplemental affidavit provide sufficient evidence to defeat Battle Creek's motion for summary judgment. In the evaluation, Dr. Ancell wrote:

It is apparent that she has a physical impairment that substantially limits one of her major life activities. Not only is she restricted from her usual occupation because she is unable to perform in a variety of areas within that profession, but she is also restricted from classes of jobs, or broad ranges of jobs that deal with adults and require her to be on her feet, and to respond in an appropriate manner.

Additionally, in his affidavit, Dr. Ancell stated that Doren's "physical impairments preclude her from engaging in most of [sic] jobs in the local and national economy as a registered nurse."

■ However, Federal Rule of Civil Procedure 56(e) states that a party must offer "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Neither Dr. Ancell's report nor his affidavit provide "specific facts." Both are merely conclusory, restating the require-

ments of the law, and therefore cannot create a genuine issue of material fact sufficient to defeat summary judgment.

Finally, Doren repeatedly asserts that besides restricting her from working more than forty hours per week, Dr. Comai also restricted her from "running, jumping, crawling, repetitive bending of knees, stairs, or squatting." Dr. Comai later stated, however, that "I was also being a bit facetious, and I apologize for that, when I say no running, jumping, or low crawl. That was just a holdover from the United States Army." Dr. Comai then confirmed that all he had really intended was to restrict Doren to eight hours a day, forty hours a week, no more than four days in succession because of her medical condition.

Battle Creek characterizes Doren's disability as her inability to work in excess of eight hours per day. However, whether Doren is disabled under the Act does not turn solely on workable hours. In addition to her inability to work in excess of eight hours per day, Doren complains of joint pain, swelling, and fatigue. Cf. *Vonderheide v. United States Post Office*, 156 F.3d 1233 (6th Cir.1998) (unpublished opinion) (holding that a plaintiff's "inability to complete more than 40 hours of work in a 40-hour week hardly qualifies him as disabled").

Doren has a number of physical limitations, but she has not presented sufficient evidence of a disability under the Act. The testimony of Dr. Ancell, a rehabilitation consultant, is not in itself sufficient to create a genuine issue of material fact as to whether Doren is disabled. Doren has a long history of employment with Battle Creek, which made every effort to work around her needs. Although this question may have been better addressed under the issue of reasonable accommodations, we are bound by the issue of disability. As tragic as cases of discharge are, Doren has not presented enough evidence to create a genuine issue of fact as to whether she is disabled under the Act. AFFIRMED.