Sheryl ALDERDICE, Plaintiff,

v.

**AMERICAN HEALTH HOLDING, INC., Defendant.**

No. C–2–98–1088.

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 19, 2000.

Emily Jane Lewis, Farlow & Lewis LLC, Dublin, OH, for Sheryl Alderdice.

John Thomas James Sunderland, Bonnie Louise Irvin O'Neil, Thompson Hine & Flory, Columbus, OH, for American Health Holding Inc.

### OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Plaintiff asserts claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq., and state law arguing that defendant wrongfully terminated her employment based on her absence from work because she received cancer treatments, and in retaliation for her claim of employee welfare benefits and to prevent potential increased health insurance premiums. Defendant moves for summary judgment. For the reasons that follow, the Court grants defendants' motion for summary judgment on plaintiff's federal claims.

### I. FACTS

#### A. Plaintiff's Medical History

Plaintiff Sheryl Alderdice, was employed by Defendant American Health Holding as a Utilization Review Nurse from December 2, 1996 through August 21, 1998. Her job duties included receiving telephone calls from doctors and hospitals who sought authorization for treatment for patients who were AHH customers, documenting patients' conditions, and authorizing treatment or forwarding the request to the Medical Director. Plaintiff's employment with AHH was at-will.

In December 1996, shortly after being hired by AHH, plaintiff was diagnosed with breast cancer. On January 3, 1997, plaintiff underwent a partial mastectomy. Plaintiff returned to work the following business day. Thereafter, plaintiff underwent six weeks of radiation therapy. AHH allowed plaintiff to modify her work schedule to allow for these therapy sessions. Plaintiff states that she experienced depression as a result of her cancer, surgery, and radiation treatment.

In April 1997, plaintiff had a left lymph node axillary dissection. Plaintiff also underwent a hysterectomy on October 6, 1997 as treatment for possible cervical cancer. Plaintiff returned to work on December 8, 1997. On August 18, 1998, Plaintiff requested a leave of absence for the period September 8, 1998 through October 8, 1998 to have exploratory surgery to alleviate repeated sinus infections. Plaintiff was terminated before her supervisors ruled on the request.

#### B. Plaintiff's Work History

Defendant presents evidence of plaintiff's repeated tardiness and other alleged infractions to support its contention that it had a legitimate reason for its decision to terminate plaintiff's employment. Defendant maintains that on June 13, 1997, plaintiff's supervisor, Margie Caughey, discussed plaintiff's habitual tardiness with her, and noted this in plaintiff's personnel file. On February 2, 1998, Caughey again discussed tardiness with plaintiff when plaintiff was 5–20 minutes late each day the preceding week. On March 17, 1998, Caughey warned plaintiff after her tardiness of 14–17 minutes for three consecutive days.

On April 17, 1998, Shirley Myers discussed with plaintiff that plaintiff had been an hour-and-a-half late to work without prior approval. On June 8, 1998, Myers again counseled plaintiff after plaintiff was twenty minutes late logging on at work.

Myers counseled plaintiff again on July 7, 1998, after plaintiff left the building during a break without telling her supervisor, and returned late after she took her daughter to an orthodontist's appointment. When counseled on this matter, plaintiff's attitude was "not positive." Myers counseled plaintiff on July 20, 1998 for being 20 minutes late to work, and on July 22, 1998 for being 15 minutes late to a mandatory meeting.

On July 23, 1998, Operations Manager John Collins gave plaintiff a written final warning concerning her habitual tardiness. The written warning listed six instances of tardiness, and provided that "any further infractions within the next 90 days may result in immediate termination."

On August 21, 2000, plaintiff accompanied her daughter to high school registration. Plaintiff had informed her supervisor that the registration began at 8:00 a.m. and continued on a first-come, first-served basis. ·Plaintiff estimated her time of arrival to work between 9:00 a.m. and 9:30 a.m. that morning. The registration process took longer than had been anticipated and plaintiff arrived to work after 9:30 a.m. She did not log on to her terminal until 10:19 a.m.

Defendant alleges other work-related problems with plaintiff, including that she ate food and put on makeup at her desk in violation of company policy, brought her teenage daughter to work, had confrontations with other employees, and left the building during breaks.

On August 21, 2000, defendant's management team met and unanimously agreed to terminate plaintiff's employment. Several participants in the meeting indicate that the reason was plaintiff's habitual excessive tardiness and other work-related problems. See Affidavits of Daniel Noe, Marjorie Caughey, and Joan Yockel. They aver the decision had nothing to do with plaintiff's health.

### C. Plaintiff's Evidence of Pretext

Plaintiff presents several categories of pretext evidence. First, she refers to the deposition testimony of John Collins, who worked for defendant as director of operations, and participated in the management team that decided to terminate plaintiff. Collins testified that a few weeks before plaintiff's termination, he was brought into Joan Yockel's office, where a conversation was taking place with Yockel, Dan Noe, and Shirley Myers. Collins states that they were discussing that plaintiff had requested a disability leave, and that they did not want to approve it because of the concessions made for her the prior year. According to Collins, they discussed finding a way to terminate plaintiff based on attendance and tardiness (Collins Depo., pp. 19–20). Second, plaintiff submits her own affidavit, as well as the affidavits of three present or former AHH employees, Susan Doyle–Wenger, Anemari Stancil, and Dolores Kabbes, stating that other employees were often tardy but were not terminated.

## II. SUMMARY JUDGMENT STANDARD

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if

the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex and Matsushita have effected "a decided change in summary judgment practice," ushering in a "new era" of summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The court in Street identified a number of important principles applicable in summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.' " *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* Rather, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III. DISCUSSION

#### 1. Family and Medical Leave Act

The FMLA provides that an "eligible employee" shall be entitled "to ... leave ... during ... a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An "eligible employee" excludes "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(1)(B)(ii).[1]

Federal courts are courts of limited jurisdiction. *See* U.S. Const. Art. III. Courts have consistently held that where a company does not employ the requisite statutory number of employees to be considered an "employer" under the relevant act, federal subject matter jurisdiction does not exist. *See Douglas v. E.G. Baldwin & Assoc., Inc.*, 150 F.3d 604, 608–609 (6th Cir.1998); *see also Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir.1983)(barring suit under Title VII); *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 579 (7th Cir.1993)(finding defendant not an "employer" as defined under the ADEA). It is therefore incumbent upon plaintiff to adduce competent evidence to create a genuine issue of fact as to whether AHH was an "employer" under the statute.

---

1. In general, 29 C.F.R. § 825.104(a) states that the FMLA covers any employer that "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."

■ Defendant asserts that it did not employ the required number of employees to be an "employer" under the FMLA. It has set forth a list of 46 employees that it employed during the week of August 17, 1998. Defendant, through the deposition of Human Resource Officer Dan Noe, avers that it did not employ 50 or more employees on, or at any time prior to August 21, 1998 (Doc. 14, Noe Depo., ¶ 8).

Plaintiff counters that defendant failed to count certain other alleged "employees." Specifically, she states that Dr. Roland Griggs, William Wilken, and Bernard (last name unknown) were independent contractors and should therefore be counted as AHH employees. She further states that Cheryl Elwood is a joint employee under 29 C.F.R. § 825.106 and should be included in AHH's employee count for FMLA purposes. She also urges the Court to recognize Ann Lawson as an AHH employee in the Westerville office even though she works and lives in Cincinnati. Plaintiff also asserts that defendant failed to account for the summer employment of Amy Fnu and misidentified the actual employment dates of Ramona Long, Mary Lou Brown, and Patty Kimball.[2]

The Court notes that the movant has met the burden of showing an absence of evidence to support the non-moving party's case. See EEOC v. Prevo's Family Mkt. Inc., 135 F.3d 1089, 1093 (6th Cir. 1998). Once the moving party has met its burden of production, the non-moving party cannot rely on its pleadings to create a fact issue, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. See Fed.R.Civ.P. 56(e); Hall v. Tollett, 128 F.3d 418, 422 (6th Cir.1997). The Court is not under a duty to search the entire record to establish that it does not hold evidence that would create a genuine issue of material fact. Rather, the non-moving party must adduce and direct

the Court's attention to probative evidence that demonstrates that there are genuine issues of fact suitable for trial.

Plaintiff offers no evidence other than her affidavit for her claims that the disputed individuals are AHH employees (Doc. 21). Plaintiff's affidavit fails to allege specific facts concerning this issue about which plaintiff would have personal knowledge. See Fed.R.Civ.P. 56(e). Rather, plaintiff speculates generally about unsubstantiated facts, and offers legal conclusions based on these facts (Doc. 21, pp. 11–12). Plaintiff's affidavit is replete with conclusory allegations and subjective beliefs. See Mitchell v. Toledo Hospital, 964 F.2d 577, 584 (6th Cir.1992). That is, plaintiff does not present any foundation showing that she was in a position to know how defendant's employees were classified and who worked where and when. Although, as an employee of defendant, plaintiff may have had a general sense of who worked for defendant, that falls far short of admissible evidence on who were defendants' employees under the relevant standards. This is especially true of independent contractors, and those who did not work in the office where plaintiff was located. The kind of evidence that could have satisfied plaintiff's burden on this issue would have been discoverable employment records. Plaintiff's affidavit, with its shorthand conclusions, is not a substitute for such admissible records of employment. The Court finds that plaintiff has failed to adduce competent, admissible evidence showing defendant is an employer under the FMLA. Plaintiff's FMLA claim is therefore dismissed.

## 2. Americans With Disabilities Act

■ Plaintiff also asserts a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"). The ADA forbids employment discrimination based upon disability:

2. While the plaintiff disagrees with defendant's listed employment dates for Patty Kimball, the Court finds this irrelevant as defendant has already listed Kimball among the 46 AHH employees on which the parties agree (See Doc. 14, Noe Depo., Exh. C).

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to the ... discharge of employees[.]

42 U.S.C. § 12112(a). Plaintiff alleges that she was subjected to an adverse employment action as a result of having cervical and breast cancer, and depression. To establish the elements of a *prima facia* case of employment discrimination under the ADA, plaintiff must show that: (1) she was disabled within the meaning of the statute; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *See Doren v. Battle Creek Health System,* 187 F.3d 595, 597 (1999); *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir.1996). If the plaintiff establishes a *prima facia* case, the burden then shifts to the employer to articulate a non-discriminatory reason for its employment decision. *See id.* If the employer offers a facially legitimate explanation, the employee then bears the burden of demonstrating that the proffered reason is a mere pretext for discrimination. *See id.*

■ As part of her *prima facia* case, plaintiff must demonstrate that she was disabled within the meaning of the statute. A disability within the meaning of § 12112(a) is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; ...or being regarded as having such impairment." 42 U.S.C. § 12102(2). The term "substantially limits" as it appears in § 12102(2)(A) "means an inability to perform or a significant restriction on the ability to perform as compared to the average person in the general population." *See Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 633 (6th Cir.1998); 29 C.F.R.

§ 1630.2(j)(1). "Major life activities includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(*l* ). The question of whether plaintiff's cancer is a qualifying disability under the ADA is an individualized inquiry to be determined on a case-by-case basis. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2142, 144 L.Ed.2d 450 (1999), *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999), *Bragdon v. Abbott,* 524 U.S. 624, 641–642, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

■ Undoubtedly, Plaintiff's cancer constituted a physical impairment under § 12102(2). However, for plaintiff to prove that her cancer was a disability, she must also show that this physical impairment substantially limited a major life activity. In determining whether an impairment substantially limits a major life activity, the Court must consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and, (3) the permanent or long-term impact or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). Generally, short term, temporary restrictions are not substantially limiting. *See Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996)(citing *Hamm v. Runyon,* 51 F.3d 721, 725 (7th Cir. 1995)); 29 C.F.R. pt. 1630, app. at 402 (1995). Plaintiff has offered no evidence which shows that her physical impairment substantially limited a major life activity within the meaning of the ADA. Plaintiff did undergo several surgical procedures, including a mastectomy and hysterectomy, to remedy her condition. It is admitted that her ability to perform a major life activity, i.e. work, during this period was substantially limited. This does not, however, lead to the conclusion that plaintiff had a disability when she was terminated. Plaintiff admits in her deposition that, at

the time she was terminated, her cancer was in remission. The mere fact that plaintiff's cancer may recur or might require further surgery does not make the condition substantially limiting. *See Roush,* 96 F.3d at 844. As a matter of law, plaintiff's temporary condition is not substantially limiting under the factors enumerated in § 1630.2(j)(2).

■ Plaintiff also alleges that she is disabled under the ADA as a result of depression from which she claims to have suffered since her early 30s, and which was exacerbated by her bout with cancer and resulting treatments. Without doubt, depression is an impairment under the ADA. *See* 42 U.S.C. § 12102(2). However, as stated above, not all impairments are disabilities for purposes of the ADA. Plaintiff must demonstrate that her depression substantially limited a major life activity. In determining whether an impairment is substantially limiting, the court must consider the individual's ability to perform major life activities "notwithstanding the use of a corrective device." *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2149, 144 L.Ed.2d 450 (1999). Therefore, where plaintiff takes medication to mitigate the depression, she must be evaluated while taking into account the ameliorative effect of the medication on her ability to perform major life activities.

■ Generally, the plaintiff who asserts that they suffer from a medical condition must prove this through a medical diagnosis from a medical professional. *See Schneiker v. Fortis Ins. Co.,* 200 F.3d 1055, 1061 (7th Cir.2000); *Duda v. Bd. of Educ. Of Franklin Park Pub. Sch. Dist.,* 133 F.3d 1054, 1059 (7th Cir.1998). This is necessary to distinguish between a claim of depression that is in actuality a personal conflict or mere temperament and irritability and a true medical condition of depression. Yet, the record is devoid of any evidence other than plaintiff's own testimony that she has been diagnosed with a qualifying mental condition.

Plaintiff also asserts that her depression affected her ability to work. She argues that these effects are substantial limitations on her ability to work generally as a nurse. The record, however, does not support plaintiff's contention. Plaintiff testified that she took several types of medication to mitigate her symptoms of depressions (Alderdice Depo., pp. 68–72). Plaintiff admits that she was able to perform the duties of her job after her surgeries and radiation treatments (Doc. 1, ¶ 22; Doc. 19, p. iii). At no time following her cancer treatment did plaintiff take leave or request an accommodation for her depression. The Court finds that plaintiff has not offered evidence to create an issue of material fact that her depression qualified as a disability under the meaning of the ADA.

■ Plaintiff argues in the alternative that she is disabled as defined by the ADA because defendant regarded her as being disabled. Under the ADA, a person may have a disability as defined under the statute if they have an impairment that, even though not substantially limiting, is "regarded by [her] employer as substantially limiting." *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 884 (6th Cir.1996). To prove an employer regarded her as having a disability, the plaintiff must show that the perceived impairment is a substantial limitation of a major life activity. *See Green v. Rosemont Industries, Inc.,* 5 F.Supp.2d 568, 573 (S.D.Ohio 1998)(citing *Kocsis,* 97 F.3d at 885). Plaintiff must point to evidence that defendant regarded her as being unable to "care for herself" or "perform all of the duties of her job." *Kocsis,* 97 F.3d at 885. Plaintiff testified that after her partial mastectomy, she was under no medical restriction (Alderdice Depo., p. 44). As a result, defendant never modified plaintiff's working conditions. Plaintiff admits that she was able to perform the duties of her job (Doc. 1, ¶ 22; Doc. 19, p. iii) and points to no specific evidence that demonstrates that

AHH perceived her as substantially limited in or unable to fulfill her work.

On facts closely analogous to this case, the Fifth Circuit upheld a summary judgment order for a defendant employer under the ADA where plaintiff stricken with cancer had failed to demonstrate that she was disabled under the Act because she could perform her essential job responsibilities with an accommodation for six months. *See Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 191 (1996). Although the treatments made Ellison nauseous, tired, and caused swelling and inflammation, she was able to return to work and gradually returned to normal. *See id.* The Fifth Circuit also held in *Ellison* that plaintiff had not shown that defendant "regarded" her as having a disability because they had not regarded her as being foreclosed from working in her type of employment as opposed to her specific job. *See Ellison,* 85 F.3d 187, 191; *accord Doren v. Battle Creek Health System,* 187 F.3d 595, 597 (6th Cir.1999); 29 C.F.R. 1630.2(j)(3)(I). In this case, plaintiff testified that she was able to perform the functions of her job. AHH accommodated plaintiff by allowing her to come to work late during her radiation treatments. AHH also asserts that it never found plaintiff to be unable to perform the essential functions of her job. The Court therefore finds that, in this case, plaintiff has not adduced evidence of a disability under the ADA.

■■ Even assuming, *arguendo,* that plaintiff could establish a *prima facia* claim for ADA discrimination, defendant has offered a legitimate non-discriminatory reason for plaintiff's termination—plaintiff's tardiness and poor work history.

Plaintiff has asserted that her inability to come to work in a timely fashion was caused by "pain, nausea, fatigue, depression, and the cancer treatment's continuing effects on her ability to care for herself and work" (Doc. 19, p. 37). Yet, when plaintiff was confronted by Caughey and Myers about being tardy, plaintiff did not ask for an accommodation for a disability, but rather offered various other reasons for her lack of punctuality.[3] In fact, plaintiff testified that she was never disciplined for tardiness during her period of cancer treatment (Alderdice Depo., p. 44). Hence, the undisputed evidence shows that plaintiff was not terminated for her claimed disability, but rather for tardiness and poor work history.

■■ Plaintiff attempts to rebut this proffered reason by arguing that it was a mere pretext for her termination. She cites the deposition of John Collins stating that AHH wanted plaintiff dismissed because it did not want to accommodate her August 17, 1998 leave request. *See* Collins Depo., pp. 18–21. Collins' testimony indicates AHH management terminated Plaintiff's leave because it did want to grant her leave, not because she had a disability. Collins testimony may establish pretext of *leave* discrimination under the FMLA. It does not, however, indicate pretext of *disability* discrimination under the ADA.

In other words, it is not enough for plaintiff to show that defendant's stated reason for terminating her was a pretext. Rather, to succeed on her ADA claim, she must show that defendant's stated reason for terminating her was a pretext for disability discrimination. Plaintiff has adduced not even a scintilla of evidence to support her allegation that she was termi-

3. On February 2, 1998, plaintiff was late because her license was suspended (Alderdice Depo., p. 137). On April 15, 1998, plaintiff was late because she had to take her daughter to a "shadowing" assignment for school (Id. at 171–72). On April 17, 1998, plaintiff was late because she had an appointment with a bankruptcy attorney of which she did not have prior notice (Id. at 138–39). On July 7, 1998, plaintiff left work without permission to take her daughter to an appointment (Id. at 141–45). On July 22, 1998, plaintiff was late because her clocks were inaccurate because her electricity had gone off (Id. at 168–69). On August 21, 1998 (the date of Alderdice's termination), plaintiff was late because her daughter's registration had taken longer than plaintiff had originally expected.

nated because of disability. AHH did not discriminate against her because she had pain, fatigue, or depression from cancer, but because they did not want her to take leave. The Court has already found that it lacks subject matter jurisdiction over the FMLA claim because defendant is not an "employer" within the meaning of the FMLA. Because plaintiff cannot rebut defendant's proffered reason for the termination with evidence of disability pretext, defendant is entitled to summary judgment on plaintiff's ADA claim.

### 3. Employee Retirement Insurance Security Act

Plaintiff also alleges that defendant violated § 510 of ERISA by harassing and terminating her in an attempt to prevent her from using the company's medical benefit plan or in retaliation for claiming medical benefits in the past. Plaintiff alleges that AHH terminated her because it feared it would have to pay increased premiums and costs in the future as a result of plaintiff's past claims. Section 510 of ERISA provides that:

> It shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or the Welfare and Pension Plans Disclosure Act, ... or for the purpose of interfering with the attainment of any right to which such participant may be entitled under the plan ...[.]

29 U.S.C. § 1140.

 To state a *prima facia* case under § 510, an employee must show that there was: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may have become entitled. *See Humphreys v. Bellaire, Corp.*, 966 F.2d 1037, 1043 (6th Cir.1992)(citing *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3rd Cir.1987), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987)). In order to show discharge in

violation of § 1140, a plaintiff "must show that an employer had the *specific* intent to violate ERISA [emphasis added]." *Id.* (quoting *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir.1991)). The plaintiff is not required to show that the employer's sole purpose in discharging her was to interfere with her pension benefits, but rather that it was "a motivating factor" in the decision. *See id.*

 If the plaintiff proves a *prima facia* case as set forth above, it is the employer's burden to introduce admissible evidence of a legitimate, nondiscriminatory reason for its challenged action. *See Humphreys*, at 1043 (citing *Gavalik*, 812 F.2d at 853). If the employer fails to set forth a legitimate, nondiscriminatory reason for its action, judgment should then be rendered for the plaintiff. If the employer successfully asserts a legitimate reason for its actions, then the presumption of wrongful action drops from the case, and the plaintiff must either prove that the interference with pension benefits was a motivating factor in the employer's actions or prove that the employer's proffered reason is unworthy of credence, or a mere pretext for discrimination. *See id.*

Even assuming that plaintiff has made out a *prima facia* case under § 510, defendant's proffered reason of plaintiff's tardiness and poor work history is a legitimate, non-discriminatory reason for her termination. Plaintiff must therefore prove that AHH's interference with her benefit plan rights was a motivating factor in the her termination or prove that AHH's proffered reason is a mere pretext for discrimination.

 Plaintiff claims that the proximity between the time that she requested medical leave for her sinus surgery and her termination is proof of pretext. While proof of proximity between the motivating event and the termination may provide enough support for a *prima facia* case, once the employer has presented a separate, legitimate reason for the discharge,

proximity will not always be enough to entitle the plaintiff to a trial on the claim. *See Humphreys,* 966 F.2d at 1044. In this case, plaintiff was terminated after she failed to adhere to the warning given her by Mr. Collins.

Plaintiff's claim that Collins' deposition testimony is evidence of pretext is insufficient to prevent summary judgment on her ERISA claim because it is, at most, evidence that she was terminated for requesting medical leave rather than evidence that defendant intended to discriminate against her for a past claim, or for potentially costing defendant more in premiums in future years. Plaintiff has not presented evidence of pretext, or otherwise, that defendant had the *specific* intent to deprive her of rights under the ERISA plan. Defendant's summary judgment motion is therefore granted on plaintiff's ERISA claim.

### 4. State Law Claims

As the Court has dismissed plaintiff's federal claims, it refuses to exercise jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) and dismisses these claims without prejudice.

### IV. CONCLUSION

Based on the foregoing, defendant's motion for summary judgment motion is **GRANTED** as to plaintiff's FMLA, ADA, and ERISA claims (Doc. 14).

The Clerk shall enter final judgment in favor of defendant, and against plaintiff, dismissing plaintiff's federal claims with prejudice, and dismissing her state law claims without prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

**IT IS SO ORDERED.**